## M. PETTEWAY v. THE STATE.

### No. 834.   Decided May 13th, 1896.

**1. Selling Intoxicating Liquors—Brandy Cherries—Evidence.**

On a trial for selling intoxicating liquor without occupation license, where the liquor sold was brandy cherries, it was error to admit proof of the effect produced by brandy cherries bought from other persons, where it had not been shown that such brandy cherries were of the same or similar character to those sold by defendant.

**2. Same—Opinion Evidence.**

On a trial for selling intoxicating liquor without license, where defendant proposed to prove that the sale of the brandy cherries was not a device to evade the law. Held: The witnesses could state the facts, but the expression, "device," was a mere conclusion and the court did not err in refusing to permit the witnesses to testify as to their opinion or conclusion.

**3. Same—Expert Evidence—U. S. Laws.**

An expert may testify as to the formula under which brandy cherries was put up, but it is not competent to prove by him what the United States revenue laws, in regard to such compound, was, and that it was not taxed by said laws. The laws speak for themselves.

**4. Same—Evidence of Statements of Third Parties.**

It was not competent for defendant to prove that other parties told him that it was no violation of law to sell brandy cherries.

**5. Same—U. S. Revenue Department.**

It was not competent for defendant to prove that the U. S. Revenue department collected no tax on brandy cherries, nor that the Comptroller of the State had stated, that, in his opinion, no tax could be collected on brandy cherries.

**6. Same—Intent not an Issue.**

The question of intent cannot become an issue on a trial for selling intoxicating liquor without license; the issue being whether or not defendant was engaged in the business.

36th Crim. Rep.—7.

7. **Same—Defendant Only Liable for County Tax Under a Levy in Force at the Time of Sale.**

A defendant on a prosecution for selling intoxicating liquor without having paid the occupation tax, can only be held to pay a county tax already levied by the Commissioners' Court for the county, under existing laws. And, where no such levy has been made anterior to the sale by defendant, he cannot be held liable for such county tax; he is not amenable to pay a county tax subsequently levied. Such subsequent levy is ex post facto, as to antecedent acts.

8. **Same—Penalty—Charge.**

The punishment prescribed by statute, Penal Code, Art. 411a, for selling intoxicating liquors, without having paid the occupation tax, is by fine in not less than the amount of the taxes due and not more than double that sum, or by imprisonment in the county jail from ten to ninety days; and it is error to charge the jury, if they found defendant guilty, to assess his punishment at not more than double the State and county tax.

9. **Same—Brandy Cherries—Test of Liability.**

Where the brandy cherries contain spirituous liquor that can be drunk as a beverage, and will intoxicate, it is a violation of law to sell the same without having paid the occupation tax and obtained a license therefor.

APPEAL from the County Court of Robertson. Tried below before Hon. O. D. CANNON, County Judge.

This appeal is from a conviction for pursuing the occupation of selling intoxicating liquors without having obtained a license therefor—the punishment being assessed at a fine of $450.

The evidence all shows that appellant runs a dry goods, family grocery, and drug store at Petteway, in Robertson County, Texas, and is postmaster at said place, and that during the fall of 1894 handled and sold some brandy cherries in connection with said business, said brandy cherries being put up in sealed quart bottles as usually handled by the trade. There is no contention that appellant sold any other liquors or medicated bitters, nor that he used said cherries as a device for the sale of liquor, but the prosecution contends that brandy cherries, as usually put up and handled by the legitimate trade, are subject to the liquor dealer's tax, and that a merchant who sells them is liable for the lqiuor dealer's tax.

*Simmons & Crawford*, for appellant.—Brandy cherries, sold as a fruit in the manner usual with the legitimate trade, and not as a device to cover the sale of spirituous liquors, the liquor being used merely as a preservative of the fruit, and not sold knowingly to those who desire to use the spirits therein as a beverage, is not subject to the liquor dealer's tax, and no violation of law.

We find no Texas case deciding this question, but the continued and repeated rulings of the Comptroller of Texas and the United States Internal Revenue Collector sustain our proposition.

The courts of Alabama and Arkansas also sustain this proposition. Rabe v. State, 39 Ark., 204; Ryall v. State, 78 Ala., 410.

This is a new question in this State, but is a very important one to commercial people in Texas, as a great many wholesale and retail merchants in Texas, acting under the ruling of the Comptroller's depart-

ment and the United States Internal Revenue Collector, have been, and are, selling brandy cherries, brandy peaches, and the like, without paying liquor dealer's tax, and with no intention whatever of evading or violating any law, and we wish the question settled by our Court of Criminal Appeals, expressly deciding this question to the end that the country may know whether or not any but saloon men can handle these goods.

We submit that brandy cherries are fruit with enough spirits to preserve the fruit, that many good people use them who are not patrons of saloons, or liquor dealers, and that it is not the intention of our liquor law to give saloon men a corner on these goods.

It is neither spirituous, vinous, or malt liquors, or medicated bitters. It is simply fruit preserved in spirits, and we do not believe the legislature intended to make such goods subject to the liquor dealer's tax. If such had been the intention, it would have been plainly so stated. Nor do we believe the court will lay down a rule requiring such an analysis of these goods as would demonstrate that they have just exactly enough spirits in them to preserve the fruit, and not a drop more. Such a rule would lead to an absurdity, and be an impossibility.

We submit that our proposition states the rule correctly, and is sound reason, sound law, sound public policy, justice, and common sense.

First, second, third, fifth and sixth assigned errors involve the ruling of the court in admitting testimony over objection of appellant, and, for brevity, may be considered together. Some of said witnesses were permitted to testify that they bought brandy cherries from Toler Bros. and Dawson, on Beck Prairie, and some that they bought brandy cherries from W. W. Glass, on Bald Prairie; that they ate the fruit and drank the fluid, and were more or less intoxicated. One fellow said he got so drunk that he could not hit the road with his hat, etc. These witnesses never bought any brandy cherries from appellant, and don't know what kind of cherries he handled.

This evidence was irrelevant, immaterial, and calculated to confuse and mislead the jury, and had no connection whatever with defendant or this case.

The court erred in excluding from the jury the testimony of Jim Garner, that there was no device to evade the law by putting a few cherries in the bottles, and balance whiskey. The State objected to the word "device." The court sustained said objection, and excluded said word.

It was a very material inquiry as to whether or not appellant used the cherries as a device to cover up and evade the liquor tax law, and for that reason appellant, on cross-examination, asked said witness (he being State's witness) the pertinent question.

There was no ground for the objection presented by the State, and no reason assigned by the court for excluding the word "device," which, on cross-examination, was clearly admissible, and very material for the defense.

The court erred in excluding the testimony of W. E. Harris, showing

the formula for putting up the brandy cherries, and that only enough spirits were put in to keep the fruit from souring and to preserve it, also giving the relative cost of said cherries and a like amount of whiskey, also his representations to appellant when he sold him the goods, that they were not subject to liquor tax.

The court erred in excluding the testimony of the witness, W. I. Purdom, that about March, 1894, he, as County Attorney, prosecuted appellant for selling a bottle of brandy cherries to a minor before the same County Judge who tried this case; that appellant was acquitted, and that said witness, as County Attorney, advised appellant that said goods were not subject to the liquor dealers' tax, and that under the ruling of said County Court, the United States Internal Revenue Collector and Comptroller of Texas, he would be violating no law to sell such goods, because said evidence was very material to show precaution and perfectly innocent intent on the part of appellant. Waldstein v. State, 29 Tex. Crim. App., 82.

The court erred in excluding the evidence of defendant, when he was sworn as a witness, in his own behalf, and offered to testify, in substance, that, before he handled or sold the brandy cherries he had written rulings from the United States Internal Revenue Collector of the Third District of Texas, and of the Comptroller of Texas, and the advice of the County Attorney of Robertson County, Texas, and of W. E. Harris and J. Adoue, the latter of the firm of P. C. Gibson & Co., the said Harris and Gibson & Co. being the parties from whom defendant purchased the goods; that said goods were not subject to the liquor dealers' tax, and that defendant would be violating no law to sell the same as fruit containing only enough spirits to preserve the fruit, and that defendant relied upon and believed said rulings, advice and representations, and in good faith handled said goods with innocent intent, and because the court erred in excluding the letters and rulings of said United States Internal Revenue Collector and said Comptroller, offered in connection with defendant's said testimony, because all of said evidence was admissible and material to the defendant to show good faith and innocent intent, and that if in fact said cherries were subject to liquor dealers' tax, defendant was misled into mistake of fact by officers whose prerogative it was to make such rulings and to give such advice, and which would excuse defendant. Waldstein v. State, 29 Tex. Crim. App., 82.

The court erred in his charge to the jury as to the penalty to be inflicted, as follows: "You will assess his punishment in any sum not less than the amount of taxes so due as shown by the evidence, and not more than double that sum." Because said charge does not say, assess his punishment at a fine in any sum, but leaves out the words, at a fine, or by a fine, and because the penalty provided by law in this case may be a fine or it may be imprisonment in the county jail for any period of time not less than ten days nor more than ninety days, at the discretion of the jury. An error in the court's charge as to the penalty is fatal.

to the conviction. Gen. Laws, 1893, p. 178, Sec. 6; Graham v. State, 29 Tex. Crim. App., 31; Prinzel v. State, 35 Tex. Crim. Rep., 274.

*Mann Trice*, Assistant Attorney-General, for the State, confesses error with regard to the charge of the court as to penalty.

HENDERSON, JUDGE.—Appellant was convicted for pursuing the occupation of selling spirituous, vinous, and malt liquors and medicated bitters in quantities of a gallon and less without having previously paid the occupation tax due thereon, and his punishment assessed at a fine of $450, and appeals. A number of errors are assigned, but we will only notice such as are necessary to a disposition of the case. With reference to the first bill of exceptions, without proof that the brandy cherries bought from other persons were of the same character or similar to those sold by appellant, it was improper for the court to have admitted the testimony with regard to the effects produced by such other brandy cherries. The bill shows that there was no proof that they were similar to those sold by appellant. There was no error in the refusal of the court to permit the witnesses for the appellant to testify that the sale of the cherries was not a device to evade the law. The witnesses could state the facts, but the expression "device" was a mere conclusion. It was competent on the part of the appellant to show by the witness, Harris, if he could, the formula under which the brandy cherries in question were put up. If he was an expert on the subject, and knew the facts, he could testify thereto. But it was not competent to prove by him the United States internal revenue laws on the subject, or that brandy cherries were nontaxable. The laws and regulations of the revenue department speak for themselves. It was not competent to prove by Adoue, and others that they told the defendant that it was no violation of the law to sell brandy cherries. Nor was it competent to prove that the United States internal revenue department collected no tax, or that the Comptroller of the State of Texas had written or stated that in his opinion no tax could be collected on brandy cherries. We do not think that proof as to the question of intent on the part of the appellant was admissible, as there was no contention that he was mistaken as to the fact that he was selling brandy cherries. In a case of this character it is a simple question as to whether or not the sale was of spirituous liquor—that is, made taxable by law; and if a party engages in the business of selling such, and does not pay the tax, he can acquit himself, even after indictment, by paying the tax and such costs as have accrued; and we fail to see how the question of intent figures at all. He can prove the fact that the beverage sold was not spirituous liquor, and so not be amenable to the tax. But the fact that he was engaged in the business of selling spirituous liquors without intending the same, unless it be shown that he was mistaken as to the fact, would not relieve him from the payment of the tax. It all depends on whether or not he was engaged in that business. It is shown in the record that the Commissioners' Court levied a tax on the 15th of

February, 1895.   The only sales for 1895, shown in the record, were in
January, and some sales were also shown to have been made in the lat-
ter part of 1894.   No levy by the Commissioners' Court of a county oc-
cupation tax is shown for the year 1894, so that the sales shown in 1895
were before any levy made for that year.   The statute with reference to
pursuing occupations, requires persons desiring to pursue such occupation
to "file with the County Clerk in which he or they propose to sell such
spirituous, vinous or malt liquors or medicated bitters, an application
for license to engage in the sale of such liquors or medicated bitters,"
prescribing the form for such application; "and shall also pay to the
collector the annual State and county tax provided for," etc.   See Arts.
5060c, 5060d, Rev. Stat., 1895.   Art. 833, Rev. Stat., 1895, provides:
"All occupation taxes due the county shall be collected by the tax col-
lector of the county without assessment, and the collector shall give to
the party paying the tax a receipt in writing, stating the name of the
person paying the same, the occupation paid for, the time such occupa-
tion is to be pursued, and the amount collected for the State and for the
county."   Article 834: "Upon the presentation of the receipts provided
for in the preceding article, to the clerk of the County Court of the
county in which such tax has been paid, such clerk shall issue a license
in the name of the State or county, or both, in accordance with the tax
paid, to the person paying such tax, authorizing him to pursue the occu-
pation named in such receipt, during the time for which he has paid the
tax."   Until the levy of the tax in 1895 by the County Commissioners'
Court, the appellant could not be held to pay a tax under such levy.   He
could only be held to pay a county tax levied under existing laws.   No
levy of a county tax is shown by the record anterior to the time when
appellant is shown to have sold the brandy cherries; and, in the absence
of such levy, appellant could not be held responsible for any county tax.
Much less can he be held responsible to pay a county tax subsequently
levied.   To hold appellant responsible criminally to pay a tax not yet
levied would be violative of the provisions of the Constitution with ref-
erence to ex post facto laws.   If the County Commissioners Court had
passed a law levying a tax upon the sale of spirituous liquors for 1894
(which is not shown), it was the duty of the appellant to have made his
application to pursue the occupation under that law, and to have paid the
tax levied thereunder.   The law authorizes these applications to pursue this
occupation to be made at any time, but they cannot be granted for a less
period than one year.   They run, however, for the period of one year
from the time they are granted.   Appellant also insists that the case
should be reversed because the court failed to charge the law applicable
to this offense.   The court charged that, if they found the defendant
guilty, to assess his punishment at not more than double the State and
county tax.   This was the old statute of March 13th, 1875 (Art. 110,
Penal Code).   In 1893, the legislature passed an act which has been
carried forward in Penal Code, 1895, and is Article 411a, which pro-
vides that the punishment in cases of this character shall be a fine in any

sum not less than the amount of the taxes so due and not more than double that sum, or imprisonment in the county jail from ten to ninety days, in the discretion of the jury.  See, Prinzel v. State, 35 Tex. Crim. Rep., 274.  Appellant urges that the evidence in this case does not sustain the verdict, because he says brandy cherries is not a spirituous liquor, and that the sale of brandy cherries is not amenable to the tax. He cites us two cases on this subject—one, Rabe v. State, 39 Ark., 204. That case is similar to this one, except that the prosecution was for selling brandy peaches without having paid the tax and procured a license. It was shown that the bottles contained six peaches surrounded by one gill of fluid or syrup, which tasted like strong liquors.  The witnesses thought that this liquid might intoxicate if one were to imbibe enough of it, but it was very weak.  The lower court convicted on this state of facts.  The Supreme Court reversed the case on the ground that the evidence did not sustain the conviction for selling ardent spirits without having first paid the tax and procured the license thereof.  But see, Musick v. State (Ark.) 10 S. W. Rep., 225.  The other case referred to is Ryall v. State, 78 Ala., 410.  The defendant in that case was convicted upon the indictment for selling spirituous liquors to a person of known intemperate habits, etc.  The evidence shows that the defendant sold what is commonly known as brandy cherries and brandy peaches, put up in bottles and preserved in liquor, which was spirituous and intoxicating.  The court below charged the jury that if they believed that the brandy peaches and cherries were preserved in liquor which was spirituous and intoxicating, they might find the defendant guilty.  The Supreme Court, in passing upon this question, say: "We see no error in this ruling.  The case falls fully within the letter of the statute, as well as within the mischief intended to be remedied by it.  If spirituous and intoxicating liquor was sold, as the evidence tended to prove, there was no proof offered to show that it was rendered any the less noxious in its stimulating and inebriating qualities by the fact that fruit was mixed with it at the time of the sale.  If persons were allowed to escape the penalty of this statute by merely adding some other article or ingredient to intoxicating liquors when made the subject of traffic, it is obvious that the law could be evaded with the greatest facility by any person who desired it.  Such a construction would practically operate to repeal the statute."  This case seems to be against the contention of the appellant.  The case of U. S. v. Stafford, 20 Fed., 720, was for the sale of distilled spirits and wines without the payment of the federal tax required by law.  Judge Caldwell, before whom the case was tried, treats brandy cherries and peaches as of two classes.  He says:  "The introduction of peaches or cherries into liquor does not necessarily change its character any more than did the introduction of drugs in the cases of the 'tonics' and 'bitters' which I have mentioned.  There is probably not a package of genuine brandied peach or cherry preserves in the State outside of those put up by housewives for family use.  Between the genuine brandied peach or cherry preserves put up for legitimate domestic

use as confectionery, and the so-called 'brandy cherries' described by the witnesses in this case and sold by the defendant, there is not the faintest resemblance. One is an edible and palatable preserve, and used as such; the other, as the proof shows, is neither edible nor palatable, and is not used as a preserve or for food, but as a stimulating beverage and for the spirits it contains. The method of making brandied peach perserves is laid down in the standard authorities on the subject of the preservation of food. The fruit, after being properly prepared, is boiled in a syrup made of refined sugar and is then placed in a bottle, the syrup poured over it, and a sufficient quantity of pure, pale brandy added, to impart to it the desired brandy flavor, just as brandy is used as an ingredient in our pudding sauce or mince pies, for the purpose of improving their flavor." It occurred to us that the question here presented is a simple question of fact. The law makes the sale of spirituous, vinous, or malt liquors or medicated bitters without procuring a license therefor a crime. If the defendant in this case pursued the business or occupation of selling brandy cherries or brandy peaches, and in bottles in which the same were contained were not merely cherries or peaches preserved as we have seen with the use of a little spirituous liquor to give them a flavor, but with the peaches or cherries was contained spirituous liquor that could be drunk as a beverage, and that would intoxicate, he was amenable to the law. This is the view we take of the question. For the errors discussed and pointed out, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*

HURT, Presiding Judge, absent.