### DANIEL et al. v. LIFE INS. CO. OF VIRGINIA.

#### No. 8576.

Court of Civil Appeals of Texas. Austin.

Feb. 3, 1937.

Rehearing Denied Feb. 24, 1937.

Wm. McCraw, Atty. Gen., and T. F. Morrow, Vernon Coe, and W. W. Heath, Asst. Attys. Gen., for appellant.

Hart, Patterson & Hart and Coleman Gay, all of Austin, for appellee.

McCLENDON, Chief Justice.

This appeal presents the sole question: Whether the considerations paid for annuity contracts are "premiums * * * on policies of insurance" within the meaning of R.C.S. art. 4769, which levies an occupation tax on foreign life insurance companies doing business in this state, measured by the gross amount of such premiums collected from citizens of this state.

The suit was by appellee, a corporation chartered under Virginia laws having a permit to do business in Texas, against the Insurance Commissioners, the State Treasurer, and the Attorney General, under chapter. 214, p. 637, Gen.Laws, Reg. Sess. 43d (1933) Leg. (article 7057b. Vernon's Ann.Tex.Civ.Stat.), to recover the amount of tax based upon annuity contract considerations demanded by the Insurance Commission and paid by appellee under protest in accordance with said statute.

The pertinent portion of article 4769 reads: "Each life insurance company not organized under the laws of this State, transacting business in this State, shall annually, on or before the first day of March, make a report to the Commissioner, which report shall be sworn to by either the president or vice president and secretary or treasurer of such company, which shall show the gross amount of premiums collected during the year ending on December 31, preceding, from citizens of this State, upon policies of insurance. Each such company shall pay annually an occupation tax equal to three per cent. of such gross premium receipts."

The article was originally enacted in 1909 as a part of section 1, c. 3, Gen.Laws 1st Called Sess. 31st Leg., p. 264, and was brought forward in the 1911 and 1925 codifications without substantial change in wording.

Absent something in the context or other portions of the statutes showing a different legislative intent—a subject we shall discuss later—the words "premiums on insurance" must be given their generally accepted meaning. Article 10(1), R.S.C.

From a careful examination of the authorities upon the subject, it is quite manifest that in general parlance insurance does not include contracts of annuity. This has been the invariable holding wherever the subject has reached the courts for decision. The distinguishing characteristics of the two, as gleaned from the adjudicated cases, are thus stated in 3 Corpus Juris Secundum, Annuities pp. 1375, 1376:

"An annuity contract differs from an insurance contract in that insurance is indemnity for a loss usually payable in a lump sum on consideration of premiums collected periodically, while the annuity paid under an annuity contract is paid periodically, usually in consideration of a single payment.

"An annuity contract comprehends few of the elements of an insurance contract. The former is distinguished from the latter in that insurance, as generally understood, is an agreement to indemnify against loss in case of property damaged or destroyed or to pay a specified sum on the death of insured or on his reaching a certain age, while an annuity is generally understood as an agreement to pay a specified sum to the annuitant annually during life. The consideration for an insurance contract is generally termed a premium and is payable annually, semiannually, monthly, or weekly; the consideration for an annuity contract is not generally regarded as a premium and is usually covered by a single payment. The power to make insurance contracts and to grant annuities is generally regarded, therefore, as distinct."

The following cases we believe comprise all the adjudications having material authoritative bearing upon the subject:

Commonwealth v. Met. Life Ins. Co. 254 Pa. 510, 98 A. 1072, is on all fours with that at bar. There the question was whether considerations paid for annuities were "premiums * * * received in money or in the form of notes, credits, or any other substitute for money" (Act June 1, 1911, P.L. 607, § 16), under the taxing laws of Pennsylvania. The tax was levied there, as here, against "every insurance company or association of another state or foreign government, authorized to do business in this commonwealth." The basis of the holding that considerations for annuities were not included in such premiums is thus summarized in the syllabus: "Insurance, as generally understood, is an agreement to indemnify against loss in case property is damaged or destroyed by fire, or to pay a specified sum upon the death of the insured or upon his reaching a certain age. An annuity is generally understood as an agreement to pay a specified sum to the annuitant annually during life. The consideration for an insurance contract is generally spoken of as a premium, which is payable annually, semiannually, monthly, or weekly. The consideration for an annuity contract is not generally regarded as a premium, and is usually covered by a single payment."

Also on all fours with the instant case is the New York case of People ex rel. Metropolitan Life Ins. Co. v. Knapp, 193 App.Div. 413, 184 N.Y.S. 345, 346 (affirmed 231 N.Y. 630, 132 N.E. 916). This was also a tax case and the decision was the same as that in the Pennsylvania Case, above. We quote from the opinion:

"The tax to be laid, therefore, is exclusively a tax on insurance corporations, upon corporations 'doing an insurance business in this state,' and it is to be measured by 'all premiums' received 'on all policies, certificates, renewals, policies subsequently canceled, insurance and reinsurance.'

"The typical case of life insurance is found when a person insured pays annually during his life a stipulated sum to an insurer in consideration of which the insurer engages to pay on the death of the insured a lump sum to a beneficiary. The typical case of an annuity is found where a purchaser pays down a lump sum to a grantor, who engages himself to pay a beneficiary during life a stipulated sum annually. In the one case the insurer receives an annual sum during the life of another and pays out a lump sum upon a stipulated death. In the other the grantor presently receives a lump sum and begins to disburse annual payments during life. In the former case the insured 'insures' a dependent or other person against the contingency of his death, and thereby seeks to make indemnity for a possible loss. In the latter case payments are immediately made, without regard to the death of the purchaser, and there is no indemnity feature whatever. The one is a provision for death, and the other is a provision for life."

In Hall v. Insurance Co., 146 Or. 32, 28 P.(2d) 875, the Supreme Court of Oregon held that contracts of annuity were not policies of insurance within the meaning of a statute of that state requiring insurance companies before issuing insurance policies to file forms thereof with the insurance commissioner.

The Circuit Court of Appeals of the Tenth Circuit reached the same conclusion with regard to a Colorado statute prohibiting delivery of any policy of insurance until its form had been filed with the commissioner of insurance. Rishel v. Insurance Co., 78 F.(2d) 881.

In Carroll v. Insurance Co. (D.C.W.D. Mo.) 9 F.Supp. 223, the question was whether a mutual insurance company had power under the laws of Missouri to grant a contract of annuity. It was held that such contract was not insurance, but that the company was authorized to make it under the wording of Missouri statutes.

In the Massachusetts case of Curtis v. Insurance Co., 217 Mass. 47, 104 N.E. 553,

Ann.Cas.1915C, 945, the contract involved was to pay a lump sum on a specific date if the grantee was then living. This was construed to be a contract "purely of endowment," and not one of insurance. The only difference between it and the ordinary contract of annuity lay in the fact that it provided for a single payment, contingent upon the life of the grantee, whereas the ordinary annuity contract provides for payments at stated intervals during the grantee's life. The conclusion reached was based upon the same reasoning applied by other courts to annuities.

Physicians, etc. v. Cooper, 199 F. 576, 47 L.R.A.(N.S.) 290, by the Circuit Court of Appeals, Ninth Circuit (cited by appellee), is not factually in point. The opinion presents an able discussion of the essential elements of insurance. But we do not regard the decision as having authoritative bearing upon the question at bar. The question there was whether contracts undertaking the defense of civil suits against physicians for malpractice were "insurance" within the meaning of California statutes.

Appellants rely strongly upon the definition by some lexicographers of the expression "policy of insurance" as including "often, an annuity contract or certificate of an insurance company," and upon expressions in some decisions referring, somewhat loosely, to annuity contracts as insurance.

■ Typical of these dictionary definitions is that of the 1934 edition of Webster's International, reading: "A certificate of insurance; any writing whereby a contract of insurance is made; the document containing the contract made by an insurance company with a person whose property or life is insured; often, an annuity contract or certificate of an insurance company."

The basis of inclusion by this high authority of annuity contracts in policies of insurance is not entirely clear; nor is the expression "often, an annuity contract or certificate of an insurance company" altogether free from ambiguity. The word "often" excludes the idea of "always," and may have been used to express the thought that some authorities include annuity contracts while others do not, or that some classes of annuity contracts written by insurance companies are properly so included. Be that as it may, the dictionary definition is not controlling, especially in view of the

unanimity of judicial decision upon the subject. It is interesting, and perhaps significant, to note that the definition of "insurance" given by the same authority does not include contracts of annuity. It reads: "Act of insuring, or assuring, against loss or damage by a contingent event; a contract whereby, for a stipulated consideration, called a *premium,* one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril, called a *risk,* the contract being set forth in a document called a *policy;* also, the business of making such contracts."

"Premium" is thus defined: "The consideration paid, whether in money or otherwise, for a contract of insurance. The premium may take any of various nominal forms, as that of an initiation fee, an admission fee, an assessment, or a stipulated single or periodic payment, according to the nature of the insurance."

And "annuity": "An amount, esp. of money, payable yearly (or, by extension, at other regular intervals, as quarterly) for a certain or uncertain period, as for years, for life, or in perpetuity; an annual allowance or income; also, the right to receive such yearly amount."

We will now consider the cases cited by appellants.

In the Kentucky case of Globe & Rutgers Fire Ins. Co. v. Hensley, 206 Ky. 202, 266 S.W. 1074, the question was whether a contract in writing was alleged in the expression "policy of insurance." Webster's definition (above) was quoted with approval. The only portions of the definition having any bearing upon the case were those in which "policy of insurance" was defined as a "writing," "document," or "certificate." Annuities were in no way involved and were not discussed in the opinion.

The question, in American, etc., v. Brawner, (Tex.Civ.App.) 93 S.W.(2d) 450 (error dis.) was whether the pleadings were sufficient to admit the defense that no contract of insurance had been made because the policy sued upon had never been signed by the insured, as required, and therefore there was no meeting of the minds of the parties. The case is cited as setting forth the necessary elements of a contract of insurance, which include meeting of the minds of the parties to the contract. Manifestly the case has no application here.

Mutual Life Ins. Co. v. Smith, 184 F. 1, 2, 33 L.R.A.(N.S.) 439, by the Circuit Court of Appeals of the First Circuit, was a suit in equity by a trustee in bankruptcy to cancel certain annuity contracts and recover the consideration paid on the ground that they were executed in fraud of the bankrupt's creditors. Recovery was denied on the ground that the insurance company was ignorant of the fraud. The case is cited on account of certain expressions in the opinion, such as: "The case is a novel one in the sense that it involves a kind of insurance or indemnity which has not been in general use, if in use at all." That the court did not have in mind even to express an opinion on whether the contracts should be classed as insurance is clear from the following quotation: "The contract between the insurance company and Dunning, or the policy of insurance from the company to Dunning, *if it may properly be called that,* is novel in kind." (Emphasis supplied.) Whether annuity contracts are insurance was in no way involved or attempted to be decided, and the case has no bearing upon the question before us.

We are not here concerned with annuities created by deed or will, which are of ancient origin. The granting of annuities by corporations upon consideration paid is a more recent practice. It appears to have been engaged in first by insurance companies to which it is largely confined at the present day. It is essentially a form of investment, and uniformly held to be purely such, regardless of the fact that in its usual form payments are contingent upon continuity of the life of the grantee. In some forms of annuity, not even this contingency exists. The fact of the existence of such contingency is held not to bring it within the classification of insurance, which generally speaking, is indemnity for loss suffered from some risk. In a broad and general sense investment may be said to have the same objective. The uncertainties arising from a constantly changing business and economic world involve an infinite variety of risks, security or insurance from which men constantly seek through investment of various kinds. But this is not the character of insurance or risk which is connoted in the business of writing insurance policies. The terms have a more narrow and restricted meaning. For many years there has been an ever-growing tendency of life insurance companies to encroach upon the field of invest-

ment by loading their policies with an increasing variety of purely investment features. This fact, however, does not affect the character of a contract made by an insurance company as to whether it is insurance vel non, nor does it broaden the definition to include as insurance that which is not in fact properly so classified. An interesting and instructive discussion of this subject is found in the Wisconsin case of Ellison v. Straw, 119 Wis. 502, 97 N.W. 168, 170. In that case the question was whether payments due the insured under a tontine policy were life insurance within the meaning of exemption statutes of Wisconsin. We quote from the opinion: "Life insurance is one thing, investment is another, but the ingenuity of the life insurance companies in formulating contracts which confuse the distinction has been active for generations. Pure life insurance has become rare, except with beneficial associations; but the gradations from that contract, with some slight provision for accumulation of dividends, to contracts where the accumulation is the predominant, if not even the exclusive, purpose, are almost numberless. Life insurance is a promise to pay a certain sum upon the death of the assured. Tennes v. Ins. Co., supra [26 Minn. 271, 3 N.W. 346]; Talcott v. Field, 34 Neb. 611, 52 N.W. 400, 33 Am.St.Rep. 662; Shakman v. U.S. Credit System Co., 92 Wis. 366, 66 N.W. 528, 32 L.R.A. 383, 53 Am.St.Rep. 920. Doubtless the amount so payable may be augmented by accumulation of excessive premiums and their earnings in the hands of the company without destroying the essential character of the contract. When, however, we find, as frequently, a promise to repay a sum made up from a portion of the premiums and their earnings at a date certain in the lifetime of the assured, we have only a contract such as a savings bank may as well make."

We find nothing in the context of the particular statute under review, nor in other related statutes, indicative of a legislative intent to give to the expression "premiums collected on policies of insurance" any other than its generally accepted meaning. The fact that the same Legislature in its previous regular session (chapter 108, § 1, p. 192, Gen.Laws, 1909 [Vernon's Ann.Civ.St. art. 4716]) provided that "a life insurance company shall be deemed to be a corporation doing business under any charter involving [among other things] an insurance, guaranty, contract or pledge for the payment of endowments or annuities,"

does not indicate, we believe, that it was the intention to substitute a legislative definition for the term insurance to be read into subsequently enacted statutes. Life insurance companies quite generally engage in granting annuities, and this enactment was nothing more, we believe, than an enumeration of the kinds of business done by corporations classified as life insurance companies.

This is especially true in view of the general rule that statutes creating taxes are strictly construed, and not extended "by implication beyond the clear import of the language used." "Such laws are to be interpreted liberally in favor of the taxpayer." See City of Austin v. Nalle, 85 Tex. 520, 22 S.W. 668, 960; Franklin Fire Insurance Co. v. Hall, 112 Tex. 332, 336, 247 S.W. 822, 823; McCallum v. A. R. Credit Men (Tex.Civ.App.), 26 S.W.(2d) 715; Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211.

Had the Legislature intended to include considerations paid for annuities within the amounts upon which the tax was to be computed, it would have been a simple matter to so state. "Doubt, if any arises, must be resolved against the right to make the exaction." Hall Case, above.

Appellees also invoke the rule of departmental construction. This rule, if the case is brought within it, is peculiarly applicable here under the holding in the Hall Case that: "The acquiescence of the Legislature in the departmental construction has not been merely a passive one, for the reason that the fees authorized by the act are a source of revenue, the consideration of which is one of the primary duties of the Legislature."

We have some doubt, however, whether the record shows clearly a departmental construction. Prior to 1932 or 1933 the reports required by the department did not prescribe what should be included in "gross premiums." Beginning with one of those years such reports carried the question: "Have you included all annuity premiums dividends, or coupons applied to purchase insurance, and premiums paid by automatic loans?"

The agreed statement of facts contains this stipulation:

"It is not hereby agreed that the Department knew prior to 1932 or 1933 that insurance companies were failing to include the amounts of considerations received for annuity contracts in their reports of gross premiums received, but it is stipulated that the plaintiff herein had not included the amounts received by it as considerations for annuity contracts sold to Texas citizens prior to that time since its admittance into the State of Texas in the year 1930.

"It is not agreed that the Insurance Department knew prior to the year 1932 or 1933 that the plaintiff was not including in its reports of gross premiums received on policies of insurance issued Texas citizens the amounts of considerations received for the purchase of annuity contracts by Texas citizens."

We find it unnecessary to pass upon the question thus presented, and rest our decision upon the grounds already stated.

The trial court's judgment is affirmed.

Affirmed.