**TENNECO INC., Plaintiff,**

v.

**SAXONY BAR & TUBE, INC., et al., Defendants.**

**Appeal of FIRST INTERSTATE COMMERCIAL CORPORATION.**

**No. 85–1257.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 21, 1985.

Decided Nov. 12, 1985.

Mary Jane Edelstein, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, Ill., for First Interstate Commercial Corp.

William J. Noble, Sidley & Austin, Chicago, Ill., for plaintiff.

Before POSNER, FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

First Interstate Commercial Corp. (FICC) tried to intervene in a suit in which it was already a defendant. Instead of gently telling FICC that once is enough, the district court denied the application. FICC immediately appealed, relying on cases characterizing as "final" and appealable denials of intervention as of right. E.g., *Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 687–88, 81 S.Ct. 1309, 1311–12, 6 L.Ed.2d 604 (1961). The premise of these cases is that the denial of intervention ends the litigation for the would-be intervenor. Because the putative party "cannot appeal from any subsequent order or judgment in the proceeding unless he does intervene, the order denying intervention has the degree of definiteness which supports an appeal". *Brotherhood of Railroad Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 524, 67 S.Ct. 1387, 1390, 91 L.Ed. 1646 (1947). A party to the litigation may appeal from any final judgment, so this rationale for an immediate appeal is unavailable.

A little background will explain how the case came to its current curious posture. In 1982 Saxony Bar & Tube, Inc., a processor of steel products, was in financial straits. Firms were unwilling to sell it steel on credit. FICC, a factor that had lent substantial sums against the security of Saxony's inventory and receivables, evidently was unwilling to make new advances. Tenneco Automotive, a division of Tenneco Inc. that makes shock absorbers (among other things), was willing to buy processed steel from Saxony, but Saxony needed to get the steel to process. It made an arrangement with Erlanger & Co., an importer of steel, to obtain the metal from Brazilian sources. Erlanger promised to supply steel; Tenneco promised to take the finished steel from Saxony; FICC, as Saxony's factor, was to supply the funds Saxony would use to pay for the steel, and FICC would take security interests in the steel and its proceeds. Erlanger and Tenneco signed an additional contract requiring Erlanger to furnish steel against Saxony's purchase documents, with a side agreement that if Saxony "fails to timely pay invoices ... Tenneco Automotive

agrees to immediately pay Erlanger the full invoiced amount."

This arrangement did not end Saxony's woes. By mid-1983 Saxony was in default to Erlanger. Saxony had some steel in inventory, and it had delivered some to Tenneco. Tenneco had paid Saxony about $340,000 and owed more. Not being peculiar about who got the money for the steel so long as it paid only once, Tenneco filed an action in an Illinois court naming as defendants Saxony, FICC, and Erlanger. It offered to pay an additional $418,431.19 and asked for a declaratory judgment that this was the maximum liability to all of the defendants combined. The complaint acknowledged that Erlanger had asserted that Tenneco owed it some $1.273 million for steel delivered to Saxony; Tenneco wanted assurance that it owed no such thing. Erlanger filed papers denominated a "counterclaim" asserting that Tenneco indeed owed the $1.273 million, and it asked for judgment.

Saxony meanwhile filed a bankruptcy action in the Northern District of Illinois, and in February 1984 Saxony removed the state proceedings to the bankruptcy court. 28 U.S.C. § 1478. The dispute about Tenneco's obligations became an "adversary proceeding" in bankruptcy, see Bankruptcy Rule 7001, a piece of litigation the outcome of which would determine the availability of funds to satisfy Saxony's obligations. The district court withdrew the Tenneco proceeding from the bankruptcy court, leaving the Saxony reorganization pending there, as 28 U.S.C. § 157(d) permits. Tenneco paid the $418,000 to FICC as a stakeholder, and Saxony sold its inventory of Erlanger's steel, producing another $506,-000 that FICC also holds.

Tenneco has tried throughout to limit its liability to Erlanger on the theory that both Erlanger and Saxony violated the Erlanger-Tenneco contract. Its sole liability, Tenneco asserts, is to pay for steel received, which it has done. Erlanger says that it performed its contract, that Saxony did not pay, and that Tenneco therefore owes it $1.273 million; it does not care what, if anything, Tenneco owes to Saxony. FICC says that Erlanger sold steel to Saxony, and Saxony sold steel to Tenneco; this gives FICC a security interest in the steel from Erlanger and receivables from Tenneco. FICC stoutly resists Erlanger's argument that Tenneco owes Erlanger directly; FICC demands that any payment pass through Saxony, for if the money does so its security interests will trump Erlanger's claims. Erlanger replies that even if Tenneco pays money directly to Erlanger, this will not injure FICC, because Tenneco also may owe money to Saxony. The prospect of double liability gives Tenneco indigestion. (Questions of characterization are important to this litigation. Our opinion does not intimate which characterization is appropriate, and neither the parties nor the district court should search it for hints. We mean to leave none. Any language is at best an inadvertent clue to a mystery we have not tried to solve.)

By late 1984 Erlanger and Tenneco had taken substantial discovery on questions relating to their contractual dealings and any errors in Saxony's orders or Erlanger's performance. Erlanger moved for summary judgment on its claim to $1.273 million from Tenneco. At this point FICC tried to "intervene," arguing that its own rights depended on the characterization the district court placed on the Tenneco-Erlanger dealings; if the judge thought that these dealings and payments bypassed Saxony, FICC would lose a receivable that was part of its security. The district court declined to allow FICC to intervene—not for the natural reason that FICC already was a party, but because it thought Erlanger's claim against Tenneco conceptually distinct from any of Saxony's and FICC's claims. Assuring FICC that nothing it did in adjudicating Erlanger's claims would injure FICC, the court said it would decide the motion for summary judgment without FICC's participation.

FICC then appealed, arguing that it was entitled to intervene as of right under Fed. R.Civ.P. 24(a)(2) because Tenneco, Erlanger, FICC, and Saxony are all claiming

interests "relating to the [same] property or transaction ... and [FICC] is so situated that the disposition of the action may as a practical matter impair or impede [FICC's] ability to protect [its] interest". See *American National Bank v. Bailey*, 750 F.2d 577, 583–84 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985); *United States v. 36.96 Acres of Land,* 754 F.2d 855 (7th Cir.1985); *Keith v. Daley,* 764 F.2d 1265 (7th Cir.1985). FICC would have a strong case under Rule 24 if it were not already a party. There is one complex series of transactions among Tenneco, Saxony, Erlanger, and FICC, and FICC surely is entitled to be heard on the question of the appropriate characterization of these transactions. It may be, as the district court said, that Tenneco could be liable directly to Erlanger and still be liable to Saxony (and hence FICC); that court has since granted summary judgment to Erlanger in a way that appears to leave open Saxony's claims against Tenneco. But the characterization of the transactions is a question on the merits that ought not to be finally resolved by the device of telling one of the participants it is not entitled to be heard.

"Finally" resolved is the important qualification. If FICC is a party to the litigation it is entitled to be heard on the appropriate characterization of Erlanger's dealings with Tenneco. If FICC should lose on the merits, and if it can show that its inability to be heard when it wanted—when the district judge was adjudicating the Erlanger-Tenneco portion of the case—was prejudicial and erroneous, it would be entitled to effective relief. As we see things, however, the district court has not told FICC that it will not entertain FICC's arguments. It has simply postponed the time at which it will listen. This is a housekeeping order of a sort commonly used in complex litigation.

 In almost every multi-party case the district court will resolve some claims ahead of others. In a tort suit with many victims, the judge may hear a single victim's case first in order to establish a pattern for the others. In a patent case with an antitrust counterclaim the judge may separate the two claims in order to promote more orderly disposition of both. So, here, the judge elected to decide one of the sets of claims (the Tenneco-Erlanger dispute) in advance of the others. In all of these cases the selection of a sequence in which to decide issues may influence the final outcome. In none of these cases is the decision to proceed on certain issues or parties rather than others immediately appealable. Temporary deferrals of adjudication, and other housekeeping matters, are not appealable unless they effectively conclude the litigation and are irreparable on appeal from the final judgment. See *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (stays of proceedings are appealable only if they effectively determine the merits); *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 2455, 57 L.Ed.2d 351 (1978) (procedural steps such as the denial of class certification are not appealable even if they spell the death knell of the litigation); *Kapco Mfg. Co. v. C & O Enterprises, Inc.,* 773 F.2d 151 (7th Cir.1985); *Mazanec v. North Judson-San Pierre School Corp.,* 750 F.2d 625 (7th Cir.1984).

 If a district court's decision to take up one issue ahead of another is wrong and causes prejudice, the party may obtain relief from a final judgment. That judgment is some time away here, however. Even the summary judgment for Erlanger in its dispute with Tenneco is not "final." Other claims and other parties remain. Only a certificate under Fed.R. Civ.P. 13(i) and 54(b) or an order granting permission under 28 U.S.C. § 1292(b) would permit an immediate appeal, and then only if the Erlanger-Tenneco dispute is sufficiently separate from the rest of the case. *Cold Metal Process Co. v. United Engineering & Foundry Co.,* 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956); *Public Service Commission v. Brashear Freight Lines, Inc.,* 312 U.S. 621, 61 S.Ct. 784, 85 L.Ed. 1083 (1941); *A/S Apothekernes La-*

*boratorium · for Specialpraeparater v. I.M.C. Chemical Group, Inc.,* 725 F.2d 1140 (7th Cir.1984); 6 Wright & Miller, *Federal Practice & Procedure* § 1408 (1971). No one may appeal from the district court's decision to consider the Erlanger-Tenneco dispute ahead of the other aspects of this litigation. A party with no right to an immediate appeal of a housekeeping order may not create the right by "intervening" in its own litigation and appealing from the denial of intervention.

This leaves only the question whether FICC has been a party all along. It has. Tenneco named FICC as a defendant in its suit, and the entire Tenneco suit was removed first to the bankruptcy court and then to the district court. Tenneco, FICC, Erlanger, and Saxony are parties to a single action for the purpose of determining how much Tenneco owes, and to whom.

Erlanger filed a counterclaim, and a counterclaim sometimes is the equivalent of a separate suit. If Erlanger had sued Tenneco about a transaction unrelated to their dealings with Saxony, that would have been a permissive counterclaim under Fed.R.Civ.P. 13(b). A permissive counterclaim is an independent piece of litigation, appended simply for convenience. It requires its own jurisdictional basis, and it proceeds as if a separate lawsuit. But the Erlanger counterclaim is not permissive. It arises from the same transactions as Tenneco's original suit; the negation of Erlanger's claim for $1.273 million was the principal objective of Tenneco's complaint. There is no independent jurisdictional basis; both Erlanger and Tenneco are Delaware corporations, so that jurisdiction could not be based on diversity of citizenship under 28 U.S.C. § 1332. Any truly unrelated dispute between Tenneco and Erlanger would have to be remanded to state court; it would have no business in federal court as an adversary proceeding in Saxony's bankruptcy.

A counterclaim arising out of the same transaction—in the usual parlance a compulsory counterclaim—is not a separate suit at all. It is simply another theory of relief in an existing suit, one leading to another possible outcome. There is no need for an independent basis of jurisdiction, see *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 375 & n. 18, 98 S.Ct. 2396, 2403 & n. 18, 57 L.Ed.2d 274 (1978); *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974). If the claim stems from the "same transaction" it must be asserted or be barred by claim preclusion in future litigation (hence the label "compulsory"), on the theory that all legal approaches and all claims for relief arising from one episode must be resolved at the same time. See *Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); *Fagnan v. Great Central Insurance Co.,* 577 F.2d 418, 420 (7th Cir.), *cert. denied,* 439 U.S. 1004, 99 S.Ct. 615, 58 L.Ed.2d 680 (1978); cf. *Warshawsky & Co. v. Arcata National Corp.,* 552 F.2d 1257 (7th Cir.1977).

The label "counterclaim" has no magic. What is really an answer or defense to a suit does not become an independent piece of litigation because of its label. Fed.R. Civ.P. 8(c); *Horsford v. Romeo,* 407 F.2d 1302, 1303 (3d Cir.1969); *Office & Professional Employees Union v. Allied Industrial Workers Union,* 397 F.Supp. 688, 691 (E.D.Wisc.1975), *aff'd,* 535 F.2d 1257 (7th Cir.1976); *Old Colony Insurance Co. v. Lampert,* 129 F.Supp. 545 (D.N.J.), *aff'd,* 227 F.2d 520 (3d Cir.1955). Indeed, one judge of this court held, while a district judge, that when one party to a contract seeks a declaration of the contract's meaning, another party's counterclaim seeking to enforce the contract is "repetitious and unnecessary." *Green Bay Packaging, Inc. v. Hoganson & Associates, Inc.,* 362 F.Supp. 78 (N.D.Ill.1973) (Bauer, J.). When the original complaint puts in play all of the factual and legal theories, it makes no difference whether another party calls its pleadings counterclaims, affirmative defenses, or anything else. The original complaint brought the dispute into court, and the parties to that complaint are parties to each aspect of the imbroglio.

There are only two tenable descriptions of this litigation. One is that the Tenneco complaint called into question all of its liabilities to FICC and Erlanger arising out of the purchases of steel through Saxony. In that event FICC is a party to every aspect of the case and may not "intervene." The other is that the Erlanger-Tenneco dispute is an unrelated, permissive counterclaim. In that event FICC may try to intervene and appeal from the denial, but Erlanger's counterclaim does not belong in federal court. The characterization of this suit as a single, though multi-party, dispute about a single series of transactions is closer to being correct. This means that FICC may not take an immediate appeal from the order that, although denominated a "denial of intervention," is actually an interlocutory order governing the timing of the disposition of different aspects of the dispute. FICC, as a party, may appeal from any final decision. This appeal, however, is dismissed for want of jurisdiction.