FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver of United of America Bank, Plaintiff-Appellee,

v.

Rabbi Mordecai ELEFANT, et al., Defendants.

ITRI Torah Research Institute and Erwin Weiner, Appellants.

Nos. 85–2991, 85–3102.

United States Court of Appeals, Seventh Circuit.

Submitted April 21, 1986.

Decided May 16, 1986.

Andrew B. Kagan, Chicago, Ill., Richard Parker, Richard Parker & Assoc., Houston, Tex., for appellants.

Paul J. Richter, DeHaan & Richter, Chicago, Ill., for plaintiff-appellee.

Before FLAUM, EASTERBROOK and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

A simple action to collect a debt has produced a host of problems, all jurisdictional. We must decide whether this court has jurisdiction; having done this, we must decide whether the district court ever did, or could, have jurisdiction.

## I

In 1983 the ITRI Torah Research Institute borrowed $114,770 from the United of America Bank. ITRI gave the Bank a note and a mortgage on a 38-foot sports fishing boat. The Dean of ITRI, Rabbi Mordecai Elefant, later executed a note for $75,000 in the Bank's favor. This, too, was secured by the boat, and it was supported by two guarantees: one by ITRI and one by Erwin Weiner. The Bank ordered ITRI to surrender possession of the boat to Rodi Boat Co., which was to hold the boat for the dura-

tion. ITRI and Rabbi Elefant defaulted on their notes. The Bank meanwhile ran into trouble, and the Federal Deposit Insurance Corp., which guaranteed some of the Bank's deposits, became its receiver. The FDIC filed an action in an Illinois court to recover on the ITRI note, the Elefant note, and the two guarantees. For good measure the FDIC named Rodi as a defendant, although it did not seek any particular relief against Rodi.

ITRI removed the case to the district court under 28 U.S.C. § 1441(a), asserting diversity of citizenship. No one contested the removal. There were nonetheless two glaring problems. Only ITRI sought removal, although as a rule all defendants must join the petition. See *Chicago, Rock Island & Pacific Ry. v. Martin,* 178 U.S. 245, 248, 20 S.Ct. 854, 855, 44 L.Ed. 1055 (1900); *P.P. Farmers' Elevator Co. v. Farmers Elevator Mutual Insurance Co.,* 395 F.2d 546 (7th Cir.1968). See also *Thomas v. Shelton,* 740 F.2d 478, 483–84 (7th Cir.1984). ITRI might have removed the FDIC's severable claims against it alone. *Bernstein v. Lind-Waldock & Co.,* 738 F.2d 179, 183 (7th Cir.1984). It purported, however, to remove the whole suit. Second, the FDIC's complaint demonstrates that there is a lack of diversity. ITRI's petition to remove treated the FDIC as taking the Bank's Illinois citizenship. Because the complaint alleges that ITRI is a New York corporation with its principal place of business in New York and that Elefant, Weiner, and Rodi (a sole proprietorship) are residents of Illinois, there is not complete diversity (on this view of the FDIC's citizenship). Nonetheless, everyone acted as if the whole action had been moved to district court, and the district judge never noticed the jurisdictional problems (of which there are more to come).

Rodi, although not the subject of any claim for relief, filed a "counterclaim" for the value of its services storing and repairing the boat; this, too, sought no particular relief, because Rodi had possession of the boat and a mechanics' lien. Rodi suggested, however, that the court might order the boat sold. The FDIC had some trouble

serving Elefant with process, for he is now in Israel. Elefant was served in November 1985.

By then the district court had granted summary judgment against ITRI and Weiner. The court found no material dispute about the existence of the notes and guarantees and the lack of payment. ITRI and Weiner had argued that the notes failed for want of consideration because, they said, the Bank had taken possession of the boat and allowed it to deteriorate. The district court held that the Bank had never had possession and that, in any event, a diminution of the value of the boat would not undercut the obligation to pay. The court entered judgment under Fed.R.Civ.P. 54(b) on the ITRI note and the ITRI and Weiner guarantees of the Elefant note. It deferred consideration of the claim against Rabbi Elefant and the "claims" by and against Rodi.

ITRI and Weiner appeal, and their principal argument is that the district court lacked jurisdiction because 12 U.S.C. § 1819 Fourth prevents the use of diversity jurisdiction when the FDIC is a receiver of a bank. The FDIC agrees that § 1819 Fourth prevented the removal and asks us to remand to the district court, so that it may decide whether Rodi's counterclaim supplies the missing jurisdiction. It also asks for $16,000 in attorneys' fees, on the ground that whoever removes a case without jurisdiction should pay the ensuing costs.

## II

■ Before we may decide whether the district court had jurisdiction, we must decide whether we do. The judgment does not wrap up the litigation. Rule 54(b) permits the entry of a partial final judgment concerning all claims with respect to a party, or all parties with respect to a claim. The district court did not dispose of all claims against one party; everyone remains before the district court as a result of Rodi's counterclaim to determine the value of its lien. This will affect the value

of the boat, and hence the net amount ITRI and Weiner must pay. So the question is whether the Elefant note and Rodi counterclaim, the two matters still pending, are "claims" separate from the ITRI note and the two guarantees.

We start with the principle that as a rule each contract is a "claim" for purposes of Rule 54(b). *Walker v. Maccabees Mutual Life Insurance Co.*, 753 F.2d 599, 601 (7th Cir.1985). Each of the notes, and each guarantee, is a separate contract under Illinois law. *Bank of Homewood v. Sjo*, 113 Ill.App.3d 179, 68 Ill.Dec. 817, 446 N.E.2d 1214 (1st Dist.1983); *Ishak v. Elgin National Bank*, 48 Ill.App.3d 614, 6 Ill.Dec. 620, 363 N.E.2d 159 (2d Dist.1977); *National Acceptance Co. v. Exchange National Bank*, 101 Ill.App.2d 396, 243 N.E.2d 264 (1st Dist.1968). Part (e) of the sixth paragraph of each guarantee allows the Bank to proceed against the guarantor without regard to efforts to collect from the maker of the note or realize on the security. Because appellate jurisdiction should be defined in as mechanical a fashion as possible, both to enable parties to know when they must appeal and to prevent jurisdictional disputes from overwhelming the disputes on the merits, we stop at the starting place.

■ Often the entry of a separate judgment under Rule 54(b) presents difficult problems because of the additional rule that a dispute is not a "claim" under the Rule—even if it would be a separate claim for purposes of claim or issue preclusion—if it has a legal or factual overlap with matters remaining in the district court. "Claim" under Rule 54(b) is defined with a view to avoiding double appellate review of the same issues. See *Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956); *National Metalcrafters v. McNeil*, 784 F.2d 817, 821 (7th Cir.1986); *A/S Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chemical Group*, 725 F.2d 1140 (7th Cir.1984). If A sues B on two grounds, factually or legally related, the entry of a Rule 54(b) judgment

on one will not permit a separate appeal. But this concern is tempered when the different requests for relief also have separate parties. When A sues B and C on separate contracts, and the district court enters judgment in A's favor against B, the fact that C has a "similar" dispute pending will not prevent A's execution of judgment against B, or B's appeal. *Walker v. Maccabees.* This is our case.

True, the claims by and against Rodi embroil everyone; no party is done in the district court. Yet Rodi's claims are distinct from those on appeal. They do not depend on or affect the validity of the notes or guarantees; they are joined to the others in this case loosely, if they are properly joined at all. See *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375 (7th Cir.1985). If the boat had sunk and been salvaged, it would be saddled with a salvor's lien, and this would influence the amount that could be realized on the security. It would have nothing to do with the notes, and it should not prevent adjudication of the makers' and guarantors' liability. So it is with Rodi's lien. The size of Rodi's bill is so distinct from any of the issues concerning the validity of the notes and guarantees that it is a different "claim" within the meaning of Rule 54(b).

That is enough to give us jurisdiction of these appeals. ITRI and Weiner say that the entry of partial final judgment under Rule 54(b) was improvident, but the district judge has substantial discretion here. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). One appropriate use of Rule 54(b) is the entry of judgment on the principal claims of the suit while reserving disposition of counterclaims that may require a longer time to resolve. The FDIC need not cool its heels waiting for Rabbi Elefant to return to the United States, or for the resolution of the amount of Rodi's lien. True, these may affect the net sums ITRI and Weiner must pay, because they will be credited with the net value of the security. When the basic liability is clear, however, a district court may require the obligor to

pay up at once. Any other approach gives litigants an incentive to tarry while they are in possession of money that is (mostly) someone else's.

██ Both the Supreme Court in *Curtiss-Wright*, 446 U.S. at 10, 100 S.Ct. at 1466, and this court in *Exchange National Bank v. Daniels*, 763 F.2d 286, 291 (7th Cir.), reheard in part, 768 F.2d 140 (1985), have expressed concern about the use of Rule 54(b) to carve a case into little pieces, multiplying the occasions for appellate review—and making each review more difficult, because the use of Rule 54(b) also multiplies the number of nice jurisdictional questions. District courts should consider carefully whether entry of judgment under Rule 54(b) really will speed disposition of the case. See *COMPACT v. Metropolitan Government of Nashville*, 786 F.2d 227 (6th Cir.1986). We are satisfied, however, that the bulk of this case properly is before us now, and given our disposition of the next jurisdictional point we will not see any other little slice of this case again.

### III

██ We have jurisdiction and must inquire whether the district court did. The petition for removal treated the FDIC as having the Bank's Illinois citizenship; because at least Weiner and Rodi are residents of Illinois, there is not complete diversity. That ought to be the end of things. But the parties now treat this as a suit between the FDIC and residents of Illinois and New York. See *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), holding that the citizenship of a trust is that of the trustee, if the trustee has full control of the assets. The same principle probably applies to receivers. *Gross v. Hougland*, 712 F.2d 1034, 1038 n. 6 (6th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984); *Barber v. Powell*, 135 F.2d 728, 730 (4th Cir.1943). If the FDIC, a federal corporation, is a citizen of the District of Columbia, where it has its principal place of business, there is diversity. Then it becomes necessary to determine whether diversity is an appropriate ground of jurisdiction when the FDIC sues as receiver.

Section 1819 Fourth provides that any civil suit to which the FDIC is a party "shall be deemed to arise under the laws of the United States ... except that any such suit to which the [FDIC] is a party in its capacity as a receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States." This statute allocates jurisdiction according to the "capacity" in which the FDIC is a party. Suits in which the FDIC acts as insurer arise under federal law, permitting the use of the federal-question jurisdiction granted by 28 U.S.C. § 1331. Similarly, the suit arises under federal law if the FDIC acquires the loan for value and sues as the creditor. *FDIC v. Braemoor Associates*, 686 F.2d 550 (7th Cir.1982), *cert. denied*, 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 297 (1983). But suits in which the FDIC acts as receiver, collecting money owed to the bank according to state law, do not arise under federal law.

This statute appears to have nothing to do with diversity jurisdiction. Yet the Fifth Circuit, the only court that has dealt with the question, had held that § 1819 Fourth prevents the use of diversity jurisdiction as well as federal question jurisdiction. *FDIC v. Sumner Financial Corp.*, 602 F.2d 670, 677–80 (5th Cir.1979). The Fifth Circuit reviewed the legislative history of § 1819 Fourth and concluded that it was designed to prevent the fact of receivership from transferring wholesale to federal court the many collection suits and related litigation in which a failed bank will become embroiled. Congress thought this litigation raised only questions of state law and saw no reason to have it tried in federal court.

Section 1819 Fourth deals only with federal-question jurisdiction, but the Fifth Circuit thought this natural because, when § 1819 Fourth was enacted in 1935, an

agency of the government could not have invoked diversity jurisdiction. Until 1958, when § 1332 was amended to make a corporation a citizen of the state in which it has its principal place of business, federal corporations were not citizens of any state and therefore could not invoke the diversity jurisdiction. See *Banker's Trust Co. v. Texas & Pacific Ry.*, 241 U.S. 295, 309–10, 36 S.Ct. 569, 572–73, 60 L.Ed. 1010 (1916). More, the Fifth Circuit pointed out, § 1819 Fourth would become an empty shell if litigation involving the FDIC as receiver could come to court on the basis of diversity. Because the FDIC may be diverse from everyone except residents of the District of Columbia, there would almost always be diversity. It is unlikely, the Fifth Circuit thought, that Congress wanted only cases collecting loans from residents of the District of Columbia to be litigated in state (or D.C.) courts.

The Fifth Circuit has made a powerful case at the level of sound policy. There is no reason why state courts would be hostile to claims brought by the FDIC as receiver, although when the FDIC acts as insurer state courts and juries may be tempted to reach into the deepest pocket of all. The case is brought up short only by the language of the statute, and we are loath to construe jurisdictional statutes, where certainty is especially important, in a way contrary to their language. The central question of statutory construction is what Congress meant *by what it said*, see *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir.1986), and Congress *said* only that cases involving the FDIC as receiver do not arise under federal law. That Congress ought to have barred resort to diversity jurisdiction, but did not need to in 1935 and forgot to in 1958, is not a comfortable ground on which to base a construction of a statute, as opposed to a recommendation for its revision. It is hard to interpret § 1819 Fourth as anticipating, and eliminating, resort to a ground of jurisdiction that did not arise until 23 years later.

Still, two considerations persuade us to follow *Sumner Financial*. First, it is almost never right to construe a statute, however "plain," in a way that saps the language of effect and undermines what Congress set out to achieve. *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed.2d 226 (1892). A court that can perceive what Congress was driving at ought not to undermine that result by giving a broad interpretation to a subsequent, but general, statute. Second, it is rarely desirable to have a conflict among the circuits on jurisdictional matters. The FDIC should have a uniform jurisdictional rule, especially when the statutory problem arises so infrequently that a conflict among the circuits may go unresolved by the Supreme Court. The advantages of a uniform federal law lead us to give great weight to the construction of a jurisdictional statute by the first court of appeals to interpret it. *Rockford League of Women Voters v. NRC*, 679 F.2d 1218, 1219–21 (7th Cir.1982).

■ We therefore join the Fifth Circuit in holding that § 1819 Fourth negates not only federal question jurisdiction but also diversity jurisdiction when the FDIC sues in its capacity as receiver of a bank. We need not decide, as the Fifth Circuit did not, what would happen when there would have been diversity between the bank and the adverse parties. Such cases could have been in federal court before the arrival of the FDIC as receiver. Although § 1819 Fourth prevents the migration of state claims to federal court because of the presence of the FDIC, there is no reason to think that Congress demanded that claims properly in federal court without regard to the FDIC be sent to state courts. In this case a suit between the Bank and the other defendants would not have produced complete diversity. It was removable, if at all, only because of the presence of the FDIC, which is not enough.

IV

■ Ordinarily the conclusion that the suit was improvidently removed requires a remand. See 28 U.S.C. § 1447(c); *McIn-*

*tyre v. Fallahay,* 766 F.2d 1078 (7th Cir. 1985). The FDIC says otherwise, on the ground that Rodi's counterclaim arises under federal law. Rodi asserts a maritime lien on the boat, and this lien is a federal claim. 46 U.S.C. § 975. The FDIC believes that the other claims may be pendent to Rodi's, and it asks us to call on the district court to determine the point.

■ There are two problems with this. First, the propriety of removal depends on whether the suit—as the plaintiff framed or easily could have framed it in the complaint—would have been within the district court's original jurisdiction at the time of the removal. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983); *Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 348, 83 L.Ed. 334 (1939). (If an improper removal went unnoticed, as here, the question becomes whether the district court would have had jurisdiction had the complaint been framed in the most favorable manner. *Grubbs v. General Electric Credit Corp.,* 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). That inquiry produces the same answer in this case.) That something happened later, such as the filing of a counterclaim based on federal law, does not make the suit removable. *Takeda v. Northwestern National Life Ins. Co.,* 765 F.2d 815, 822 (9th Cir.1985) (collecting cases). Second, Rodi's counterclaim is so far removed from the FDIC's suit on the notes and guarantees that it could not support pendent jurisdiction. If the initial suit had been Rodi's, the FDIC's attempts to collect the notes and guarantees from those having interests in the boat would have been permissive cross-claims rather than compulsory counter-claims. It is not another theory of relief within the court's pendent jurisdiction; it is a completely separate series of suits seeking different relief from different parties. These claims would have needed an independent basis of jurisdiction, a basis lacking here. So the district court must return the FDIC's suit to the courts of Illinois, even though it may retain Rodi's maritime suit.

## V

■ This leaves for disposition the FDIC's request for attorneys' fees, which we deny. The FDIC should have been aware of its unique jurisdictional statute and ought not to obtain fees for wasting the district court's time along with its own. It also should have noticed the two defects in the removal that do not require consideration of § 1819 Fourth. True, Fed.R.Civ.P. 11 requires the party filing a paper to do the investigation, *Thornton v. Wahl,* 787 F.2d 1151 (7th Cir.1986), and ITRI filed the fatal paper (the petition for removal) without doing the necessary investigation. Fees are awarded, however, only when the failure to investigate leads to the taking of an objectively unsupported position. A party need not scour the United States Code for obscure jurisdictional statutes, especially those its adversary should have memorized; more, a party need not pay its adversary's fees because it failed to turn up a statute the terms of which are not even applicable. Section 1819 Fourth does not mention diversity jurisdiction, so it is hard to fault ITRI for thinking the law irrelevant, if it knew of the statute. The other jurisdictional flaws were sufficiently obscure that neither the district court nor the FDIC noticed them, although both should have. The FDIC has only itself to blame for the costs it has incurred.

The request for attorneys' fees is denied. The judgment is vacated, and the case is remanded to the district court with instructions to remand the FDIC's collection actions to state court.