FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,

v.

HARTFORD INSURANCE COMPANY
OF ILLINOIS, et al., Defendants.

The AMERICAN INSURANCE
COMPANY, Third–Party
Plaintiff–Appellee,

v.

UNITED STATES of America, Third–
Party Defendant–Appellant.

No. 88–3268.

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1989.

Decided June 15, 1989.

Rehearing and Rehearing En Banc
Denied July 25, 1989.

Anthony J. Steinmeyer, John P. Schnitker, Dept. of Justice, Washington, D.C. for Federal Deposit Ins. Corp.

Robert M. Chemers, Michael G. Burton, Pretzel & Stouffer, Fern Bomchill, Mayer, Brown & Platt, Douglas M. Reimer, McDermott, Will & Emery, Chicago, Ill., for American Ins. Co.

Before POSNER, EASTERBROOK
and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

When the Federal Deposit Insurance Corporation bailed out Continental Illinois National Bank in 1984, it acquired, in addition to a lot of bad loans, Continental's right to collect on fidelity bonds issued by five insurance companies. These insurers promised to compensate Continental for losses caused by its employees' misconduct. Hanky-panky in dealing with Penn Square Bank of Oklahoma has landed John R. Lytle, the head of the Mid–Continent Division of Continental's Oil and Gas Group, in prison. The FDIC wants recompense for the losses Lytle left behind.

Lytle—inspired by $585,000 in unsecured personal "loans" from Penn Square arranged by its officer William G. Patterson —induced Continental to purchase participations worth more than $1 billion in loans made by Penn Square. Continental was left holding the bag when many of the

borrowers folded, taking Penn Square with them. See *United States v. Lytle*, 677 F.Supp. 1370 (N.D.Ill.1988), describing the criminal case. (Lytle and Patterson pleaded guilty in June 1988.) Continental's losses exceed $200 million, the exact amount depending on how much can be recovered from the assets backing the loans.

The FDIC filed this suit to collect on the fidelity bonds, which cover tiers of losses. Hartford Insurance Company, for example, supplied $5 million of coverage with a $1 million deductible; Insurance Company of North America supplied $5 million of coverage with a $6 million deductible (i.e., the band between $6 million and $11 million), and so on up to $101 million. American Insurance Company underwrote the bands between $11–31 million and $71–101 million (a total exposure of $50 million). The FDIC asked not only for this $50 million but also for punitive damages on the ground that American financed Lytle's defense against the criminal charges, violating its fiduciary duty to Continental.

American responded with a third-party complaint against the United States under Fed.R.Civ.P. 14(a). It believes that the FDIC, as receiver, mismanaged Penn Square's portfolio of loans and thus magnified Continental's losses. American believes that it should not be required to pay the FDIC, as insurer of Continental's deposits (FDIC–Corporate), more than the loss Continental would have borne had the FDIC, as receiver (FDIC–Receiver), maximized the value of the assets securing the loans. FDIC–Receiver's errors, according to American, are torts for which it has a remedy under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80.

Resort to the FTCA introduces a complication: the right defendant is the United States. Suits by and against the FDIC are authorized by 12 U.S.C. § 1819 Fourth, a sue-and-be-sued clause. If American were to sue FDIC–Receiver, it would have to go to Oklahoma in light of 12 U.S.C. § 94, which provides:

> Any action or proceeding against a national banking association for which the Federal Deposit Insurance Corporation has been appointed receiver, or against the Federal Deposit Insurance Corporation as receiver of such association, shall be brought in the district or territorial court of the United States held within the district in which that association's principal place of business is located....

The United States asked the district court to dismiss it as a party and to direct American to proceed under § 1819 Fourth against FDIC–Receiver. Although the initial motion did not mention venue, the United States supplemented its contentions before the district court took up the matter and so avoided forfeiting the venue point under Fed.R.Civ.P. 12(h)(1). *Bechtel v. Liberty National Bank*, 534 F.2d 1335, 1341 (9th Cir.1976). The district court denied the motion, 692 F.Supp. 866 (N.D.Ill. 1988), and certified issues for an interlocutory appeal under 28 U.S.C. § 1292(b). We accepted jurisdiction.

Despite sue-and-be-sued clauses, the FTCA is the exclusive remedy when it applies, 28 U.S.C. § 2679(a). We held in *FDIC v. Citizens Bank & Trust Co.*, 592 F.2d 364 (7th Cir.1979), that § 2679(a) precludes suits under sue-and-be-sued clauses even when one of the exemptions in the FTCA prevents the imposition of liability on the United States. Although there is a question whether a suit against the FDIC *as receiver* is a suit against an "agency" of the United States—important because § 2679(a) makes the FTCA exclusive only when a "federal agency" is involved—the district court thought the matter settled by *Citizens Bank*. The tort alleged in *Citizens Bank* had been committed by the FDIC as receiver, and in remarking, 592 F.2d at 369 n. 5, that "FDIC is unquestionably a 'federal agency' within the meaning of § 2679(a)" we made nothing of the distinction between FDIC as corporation and FDIC as receiver. So the district court held that the United States is the proper defendant, 692 F.Supp. at 867–70. If the suit is against the United States rather than FDIC–Receiver, 12 U.S.C. § 94 seems inapplicable. Nonetheless, the district court believed, "[t]he narrow venue provision under § 94 controls over the more general FTCA [venue] provision". 692

F.Supp. at 871. But just as it seemed about to pack American's action off to Oklahoma City, the district court distinguished third-party from original actions. Believing that it would be convenient to litigate everything in Illinois, the court denied the motion to transfer. *Ibid.*

Logically, our first question is: "Who is the right defendant?" If FDIC–Receiver is the proper party, then § 94 applies by its terms. In authorizing the appeal, however, the Solicitor General instructed counsel not to argue that FDIC–Receiver is the proper party. Apparently the Solicitor General believed that question foreclosed in this circuit by the implication (though not the square holding) of *Citizens Bank.* At oral argument counsel for the United States steadfastly declined to address the subject. Yet if the identity of the proper party affects subject-matter jurisdiction, we must wrestle with the problem no matter what the parties do. Even if not jurisdictional, an unresolved dispute about the right party may make it improvident to take up the interpretation of § 94 on interlocutory appeal.

Whether the United States or FDIC–Receiver is the right party does not affect subject-matter jurisdiction, however. If the United States is the right party, then 28 U.S.C. § 1346(b) supplies jurisdiction. If FDIC–Receiver is the right party, then judicial competence comes from § 1819 Fourth and 28 U.S.C. § 1331. Section 1819 Fourth provides that any civil suit to which the FDIC is a party is deemed to arise under federal law (so that § 1331 supplies jurisdiction) unless the FDIC acts as receiver of a state bank and the suit "involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law". See also *FDIC v. Elefant,* 790 F.2d 661, 665–66 (7th Cir. 1986). A tort claim against the FDIC is not one that involves "only" creditors' or stockholders' rights. *DuVoison v. FDIC,* 872 F.2d 1257 (6th Cir.1989). To the extent sovereign immunity has jurisdictional attributes, there are no worries: either the FTCA or § 1819 Fourth waives immunity. So the claim may be resolved by a federal court, and the identification of the real

party in interest, Fed.R.Civ.P. 17(a), is not a jurisdictional problem.

Sooner or later this court must decide whether, given *Citizens Bank,* the venue provisions of § 94 have melted away. This case is as good as any, and we therefore decline to reconsider the decision of another panel of this court accepting the appeal under § 1292(b). We would be concerned if we thought that the Department of Justice were trying to maneuver this case to Oklahoma only to ask the Tenth Circuit to disagree with *Citizens Bank,* consigning American's claim to limbo. At oral argument counsel for the United States disavowed any such plan, and the law of the case would make the tactic difficult even if the United States were inclined to try. *Christianson v. Colt Industries Operating Corp.,* —— U.S. ——, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988).

So we turn to the question whether 12 U.S.C. § 94, which controls venue in suits "against the Federal Deposit Insurance Corporation as receiver of [a defunct banking] association", applies when the United States is the party. Although not 100% word play, this question is highly formal. What is "the Federal Deposit Insurance Corporation as receiver" other than part of the United States? To sue FDIC–Receiver is to sue those officials of the federal government who happen to be responsible for winding up the affairs of failed banks. Sometimes a suit arising out of a federal activity will bear the name of the persons responsible in their "official capacity" (think of the flood of cases styled Applicant for Benefits v. Today's Secretary of Health and Human Services), sometimes it will name the agency (Employer v. National Labor Relations Board), sometimes the United States. Whether these differences in nomenclature make a difference to venue depends on the function of the statute. *Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980).

Section 94 is the residue of the venue provision of the National Bank Act of 1864, which applied to all suits against national banks. See *Radzanower v. Touche Ross &*

*Co.*, 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976). It was designed "to prevent interruption in [the banks'] business that might result from their books being sent to distant counties", *First National Bank of Charlotte v. Morgan*, 132 U.S. 141, 145, 10 S.Ct. 37, 38–39, 33 L.Ed. 282 (1889). Photo-copiers, computers, fax machines, and air travel removed the rationale for the statute. Instead of repealing § 94, however, Congress curtailed its scope in 1982, substituting receiverships for banks. Section 94 now centralizes the winding-up of banks much as the Bankruptcy Code draws into a single forum the winding-up of other firms. One court will oversee the receivership, conserving both judicial resources and the assets of the estate, which could dwindle as FDIC–Receiver retained law firms across the country to educate many district judges about the status of a single bank.

One failure can spawn dozens of cases, a point Penn Square proves. Section 94 has been used repeatedly to consolidate the fallout of that collapse. E.g., *National Union Fire Insurance Co. v. Continental Illinois Corp.*, 640 F.Supp. 182 (N.D.Ill. 1986); *In re Continental Securities Litigation*, No. 82 C 4712 (N.D.Ill. Oct. 21, 1985); *In re Longhorn Securities Litigation*, 573 F.Supp. 274 (W.D.Okla.1983). Section 94 was amended shortly after Penn Square closed in July 1982, and Rep. Lott remarked: "Why is this legislation badly needed? That can be summed up in three words—Penn Square Bank." 128 Cong. Rec. 27346 (Oct. 1, 1982). One district judge in Oklahoma has become (all too) familiar with the affairs of Penn Square and FDIC–Receiver's management of the estate. Challenges to FDIC–Receiver's conduct belong there to facilitate quick, consistent decision-making. If the funds to pay a judgment under the FTCA would come from the Penn Square estate, or even from the FDIC's budget, this becomes even clearer. (The FTCA designates the Treasury's Judgment Fund as the source of compensation only when "payment is not otherwise provided for". 31 U.S.C. § 1304(a)(1). The FDIC's statute calls for payment of receivership expenses out of the receivership estate. 12 U.S.C. §§ 197,

1822(a). We need not decide whether this puts receivership assets, or the FDIC's insurance fund, at risk when FDIC–Receiver is charged with mismanagement.)

Treating FDIC–Receiver and the United States as separate parties for purposes of § 94 threatens more than the central administration of the failed bank's estate. Almost anything the FDIC does as receiver could in principle be characterized as a tort, making the United States the right defendant. The rest of what FDIC–Receiver does probably comes under the head of contract, and the United States may be the right party in contract actions too, given the Tucker Act, 28 U.S.C. § 1346(a)(2). If suits about the conduct of FDIC–Receiver but naming the "United States" fall outside § 94 for that reason, not much would be left of § 94. Courts should think twice before giving a statute a reading that renders it inapplicable to the kinds of cases for which it was designed. *Mercantile National Bank v. Langdeau*, 371 U.S. 555, 560, 83 S.Ct. 520, 523, 9 L.Ed.2d 523 (1963) (applying this principle to § 94); *Elefant*, 790 F.2d at 666. American wants us to give § 94 a reading that would leave its 1982 version stillborn. The district court declined; so do we.

Last comes the question whether third-party actions should be treated differently from original actions. The district court said "yes", explaining:

[T]he third-party claim is directly related to the underlying claim and much of the discovery would be duplicative if the third-party complaint were litigated in a separate forum. Moreover, separate litigation would cause serious inconvenience to American; it would be forced to maintain legal counsel and litigate in two locations. Finally, judicial resources would be conserved by the centralization of this apparently complex litigation.

692 F.Supp. at 871. This does not persuade us on either factual or legal planes. Duplicative discovery is unnecessary. Once either side gets its hands on a fact, it is unnecessary to "discover" the datum again in a second forum. Judicial resources will be conserved by separation rather than

joinder of the claims. The district court in Oklahoma is well-versed in the Penn Square receivership, while the district court in Illinois would have to immerse itself in a complex proceeding unfamiliar to it before it could decide whether FDIC–Receiver tortiously mismanaged the Penn Square estate. Whether Lytle violated his duties to Continental—the central issue in litigation to collect on the fidelity bonds—is unrelated to whether FDIC–Receiver violated its duties to Penn Square's creditors. Problems in the administration of the estate relate only to damages in the Illinois action, and then only if exemplary performance by the FDIC would have reduced Continental's losses to less than $101 million.

Be that as it may, the legal point is dispositive. The district judge examined convenience from the perspective of American, the third-party plaintiff. Section 94, like venue rules generally, *Leroy v. Great Western United Corp.*, 443 U.S. 173, 184–85 & n. 16, 99 S.Ct. 2710, 2716–17 & n. 16, 61 L.Ed.2d 464 (1979), is designed to protect the defendant's convenience, not the plaintiff's. Perhaps we should say that § 94 *especially* was designed to protect defendants' convenience. *Charlotte National Bank*, 132 U.S. at 145, 10 S.Ct. at 38–39. The former version was a uniquely powerful statute, trumping other venue provisions of more general application. E.g., *Radzanower* (§ 94 prevails over the nationwide venue provision of the securities laws). Nothing in the 1982 amendment, which cut the scope from all banks to failed banks, suggests that § 94 is to have less force when it applies. *Langdeau*, 371 U.S. at 563–64, 83 S.Ct. at 524–25 brushed aside a contention that § 94, if applied, would compel the plaintiff to sue in multiple forums. So, here, the prospect that American will have to visit two forums cannot detain us. FDIC–Receiver is entitled to the privilege given by § 94 despite the cost to its adversary. If statutes such as the one considered in *Radzanower* yield to § 94, then the common law doctrine of "ancillary venue" in third-party actions yields too.

The decision of the district court is vacated, and the case is remanded with instructions to transfer American's FTCA claims to the Western District of Oklahoma under 28 U.S.C. § 1406(a).

RIPPLE, Circuit Judge.

As the majority points out, the United States has declined to argue whether the FDIC–Receiver, rather than the United States, is the proper defendant in the third-party action. I would therefore vacate the grant of permission to bring this discretionary appeal on the ground that permission was improvidently granted.